invention, especially when I consider that if there be real patentable novelty in the combination, a refusal to grant a patent would operate irremediable injury; whereas, if it be not substantially new, the patent will not prevent the public from the use of the combination; but being only prima-facie evidence in his favor, a jury of the country could protect a party charged with infringement upon evidence given that there is no novelty. Giving, then, to the applicant the full benefit of my doubt, as also of the most favorable interpretation of his claim, I am of opinion that there is error in the decision of the office. Perhaps in concluding this op'nion it may be allowed that I suggest to the applicant to amend his specification before the emanation of a patent, so as to make the language of his claim accord unequivocally with the intention which I have ascribed to the terms used therein.

[NOTE. A patent was subsequently issued to the applicant, October 27, 1857, and is numbered 18,499.]

## Case No. 2,975.

### In re COLE.

[8 Reporter, 105;[1] 7 Wkly. Notes Cas. 114.]

Circuit Court, E. D. Pennsylvania.    May 9, 1879.

PRACTICE—COMMISSION TO TAKE TESTIMONY—EXAMINATION—REGULARITY—COUNSEL AND CLIENT—PRIVILEGED COMMUNICATIONS—PERPETRATING CRIME.

1. Where a commission to take testimony has issued from the court of another circuit, and the aid of the court in whose jurisdiction the witnesses reside is sought to enforce it, the latter court will not inquire into the regularity of the issuance of the commission before compelling witnesses to answer.

2. Privileged communications between counsel and client are those which are lawful, and which relate to the business of the client, and fall within the scope of professional duty. A communication relating to the perpetration of a crime by the counsel is not privileged.

Motion for attachment. C. C. Cole, Esq., was of counsel for the Iowa Central Railroad, in a suit in the circuit court of Iowa, to foreclose a mortgage on said road. R. L. Ashhurst, Esq., was chairman of a committee of stockholders of the road; J. F. Cate was president of the said road; both the latter gentlemen were in frequent confidential communication with Cole, with reference to the litigation and matters connected therewith. During the case certain libellous publications appeared, attacking the character and motives of [Hon. John Dillon, United States circuit judge for the district of Iowa][2] the judge before whom the case was. Cole was charged with the authorship of said publications, and proceedings were had by the Iowa bar association for the purpose of disbarring him as intending to obstruct the course of justice; and a commission was directed by the cir-

[1] [Reprinted from 8 Reporter, 105, by permission.]

[2] [From 7 Wkly. Notes Cas. 115.]

cuit court of Iowa to a commissioner in the eastern district of Pennsylvania, directing him to take testimony. Before the commissioner, Messrs. Ashhurst and Cate refused to answer certain questions as to whether they had received certain letters from Cole, &c., on the ground that they were confidential communications between counsel and client. Attachments were then asked for.

Cook & Lane, for the motion.
E. G. Platt and J. C. Bullitt, contra.

BUTLER, District Judge. Two questions were raised: 1. That the circuit court of Iowa had no authority to issue the commission. 2. That the communications were privileged.

As to the first, I, as a judge, have no authority to inquire into the jurisdiction of the circuit court of Iowa, or whether or not there is there pending a civil action. That court has decided that question, and issued a commission. It would be highly discourteous to look behind its record, and I decline to do so.

Secondly, are the communications privileged? The general law in regard to privileged communications is well understood, and originated far back in the history of jurisprudence. How far, in modern times, the law has been modified, it is not now necessary to consider. It is sometimes said that all communications between counsel and client are privileged; but this is too general, and is inaccurate. They must relate to the business and interest of the client; and, moreover, they must be lawful; for, if unlawful, public policy forbids their concealment under the plea of privilege; and, if lawful, they must fall within the scope of professional duty. Communications by counsel to client, likewise, are usually privileged, because closely connected with the client's interest and business. See Weeks, Attys. at Law, p. 252. Suppose a case most favorable to the witnesses, viz., that these communications were by client to counsel, would they be privileged? I do not mean to imply any fault in these gentlemen. I have no doubt they are entirely free from blame. But suppose a client had devised, with the assistance of counsel, a scheme to obstruct the administration of justice, would the communications be privileged? The authorities applicable to such cases say not. The charge here is that Mr. Cole intended to promote perpetration of crime. Had it not been for the learned argument of counsel who opposed the motion, I should not have had the slightest doubt about the case. The matter does not fall within the scope of professional employment. Moreover, these communications have been already given to the public. The inquiry is not what they were, but who made them, and how are the client's interests affected by them? The protection is for the benefit of the client, not the counsel. I am of opinion

that witnesses must answer [all material questions under this commission].[1]

[If it is intended that the process of the court should be invoked, the questions must be first written out and shown to be material.][1]

[NOTE. The respondent Cole demurred to the information presented against him by the bar association, and the sufficiency of the information was passed upon by Mr. Justice Miller. See Case No. 2,973.

[In a note to the report of Mr. Justice Miller's opinion in 1 McCrary, 405, it is stated that before the final hearing Mr. Cole made a satisfactory acknowledgment and apology, whereupon, on motion of the committee of the bar association, the proceeding was dismissed.]

---

## Case No. 2,976.

### COLE v. The ATLANTIC.

[Crabbe, 440.][2]

District Court, E. D. Pennsylvania. Sept. 10, 1841.

MARITIME LIEN FOR WORK AND MATERIALS— LACHES—LIMITATIONS.

1. The law will not suffer a mechanic's claim on a vessel, for work and materials furnished, to be defeated on slight grounds, but will be astute to prevent it.

[Quoted in Reeder v. The George's Creek, Case No. 11.654. Cited in The Tonawanda, 27 Fed. 576.]

2. A lien for work and materials is not barred by the lapse of two years, unaccompanied by culpable or unreasonable neglect, but will bind the vessel after that time, even in the hands of a bona fide purchaser.

[Cited in The D. M. French, Case No. 3,938; The E. A. Barnard, 2 Fed. 722; The Bristol, 11 Fed. 163.]

In admiralty. This was a libel [by John Cole, a sailmaker] for work and materials furnished nearly two years before the commencement of suit. The only defence was the lapse of time, and an alleged unwarrantable neglect.

O. Hopkinson, for libellant, cited The Rebecca [Case No. 11,619]; The Mary [Id. 9,186]; The Nestor [Id. 10,126]; The Jerusalem [Id. 7,294]; North v. The Eagle [Id. 10,309].

Gerhard, for respondent, cited, in addition, Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328.

HOPKINSON, District Judge. The libel sets forth that the brig Atlantic, owned by Samuel Mowrey, of Lubec, in the state of Maine, about the 19th October, 1839, came to the port of New York, in need of repairs and supplies to render her competent to prosecute her voyages; that the libellant contracted to furnish the necessary repairs and supplies, and did furnish them according to his contract, to the amount of three hundred and twenty-six dollars and seventy cents, as ap-

pears by a schedule annexed to the libel; and that this sum is now due and unpaid. The supplies in question were furnished to the master of the brig. The answer is put in by one Jeremiah Fowler, of Maine, who avers that he is the true and lawful owner of the brig, and has been so since the 26th of June, 1841, and that he became owner without any knowledge or notice of the claim of the libellant; that, since the said claim has arisen, the brig has made many voyages between the said port of Lubec and New York, and between Lubec and Philadelphia; that she is regularly enrolled at Lubec, and that he is ignorant of the facts and allegations contained in the libel, and prays that the libellant may be obliged to make due proof of them. The libellant proved his account as it was annexed to his libel, and no dispute has been made of its correctness. A commission was taken by the respondent, to Lubec, and the first witness examined was Jabez Mowrey, the former owner of the brig, who is erroneously called "Samuel" in the libel. The competency of this witness was objected to by the counsel of the libellant, but his testimony was read, reserving the objection. He testifies that he believes Jeremiah Fowler is the sole owner of the brig; that he gave the said Fowler a bill of sale for her, dated the 1st of April, 1841, a copy of which is annexed to his deposition. He says he knew nothing of this claim, and never ordered the master, or requested the libellant, to furnish the brig with the sails and other articles mentioned; and he is confident that Fowler had no knowledge of the claim. He says the brig has been at New York two or three times since October, 1839; that she has been to Boston, and Wilmington, North Carolina, and took a load of coal from Philadelphia to Boston. I give the evidence of this witness without prejudice to the exception, if it should hereafter avail the libellant. The next witness was Samuel Root. He testifies that he knows the respondent to be the owner of the brig, and that he became so on the 1st of April, 1841, by a bill of sale from Jabez Mowrey. He says that the brig has made a number of voyages since October, 1839, and has been once at New York and Philadelphia since that time, but as to other places he cannot say. The bill of sale has a clause in it from which the counsel for the libellant has inferred that the respondent had some knowledge of this claim, or, at least, a suspicion that there were unsatisfied claims against the brig, and from which he has endeavored to guard himself. This clause contains a covenant and warranty against all lawful claims and demands of all persons whomsoever. Such are the facts of the case, and we are to say what is the law, on the question between these parties.

This is a case of supplies furnished to a foreign vessel, and it has not been questioned that the law gave the libellant a lien for them on the brig, which may be enforced in

---

[1] [From 7 Wkly. Notes Cas. 115.]

[2] [Reported by William H. Crabbe, Esq.]